C. W. Scott, Appellee, v. C. M. Stewart, Appellant.

Municipal Corporations: PUBLIC IMPROVEMENT: CONTRACT: INSTRUCTIONS. Where a sidewalk contract required plaintiff to construct the same according to the specifications of the department of public construction of the city, and provided that the decision of the

department should be conclusive as to the manner of doing the work; that the price for the work, when completed to the satisfaction of the city and defendant, should be paid when the work was accepted; and the undisputed evidence showed that the work had been approved by defendant and the officers of the city: *Held*, that as the court instructed that the burden was upon plaintiff to show that he had performed the work in substantial compliance with the contract, defendant was not entitled to a further instruction that if he was in good faith dissatisfied with the work plaintiff could not recover.

**Same:** APPROVAL OF IMPROVEMENT: EVIDENCE. The evidence in this case is reviewed and held to show that the sidewalk in question was constructed substantially according to specifications, and of materials of proper proportion; that the defendant knew of the character of the work and of the materials used as the work progressed, and approved of the work upon its completion.

**New Trial:** REMARKS OF COURT: PREJUDICE. In view of the improper cross-examination of the plaintiff in the instant case, the remark of the court, in referring to the evidence, that it was very evident plaintiff was not a capitalist, furnished no ground of complaint.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, MARCH 18, 1913.

THIS is an action to recover contract price for construction of sidewalks. The answer was a general denial. Verdict and judgment for the plaintiff. Defendant appeals.— *Affirmed.*

*W. C. Strock,* for appellant.

*Van Vleck & Holmes* and *S. B. Allen,* for appellee.

EVANS, J.—The plaintiff entered into a contract with the defendant to construct two sidewalks, one upon East Walnut and the other upon East Grand, in front of certain properties of the defendant. The sidewalks were both constructed in

pursuance of the contract. The walk upon Walnut street was eighty-eight linear feet by fourteen feet in width, and that upon Grand was a little longer and was 16 feet in width. The plaintiff brought his action upon a written contract and averred performance thereof. The defendant admitted the contract and made general denial of all other allegations. The real controversy made here and in the court below is not readily discoverable from the pleadings.

I. The defendant's defense, in fact, centers upon the last clause of the written contract which is as follows: "The price for the work when completed and satisfactory to city

1. Municipal corpora- tions: public improvement: contract: in- structions.

inspector and to C. M. Stewart to be $210 (in addition to brick above mentioned), and to be paid by C. M. Stewart when work is com- pleted, refuse removed, and work accepted." The contention of the defendant is that he was not satisfied with the performance of the contract, and that the plaintiff failed to prove that the work was satisfactory to him, and that therefore he was entitled to a directed verdict for the defend- ant. The defendant also requested certain instructions to the effect, in substance, that, if the defendant was in good faith dissatisfied with the work, the plaintiff could not recover. These instructions were refused. The trial court did instruct, however, that the burden was upon the plaintiff to prove that he performed the work substantially as provided by the con- tract. Except as above quoted, there was no provision of the written contract which required the plaintiff to satisfy the defendant. The contract did bind the plaintiff to construct the work "according to specifications required by the depart- ment of public construction of the city of Des Moines." As will be hereafter noted, these specifications expressly provided that the decision of certain public officers should be final and conclusive as to the manner of doing the work. Whether, however, the clause above quoted would be sufficient of itself to require the plaintiff to satisfy the defendant with his work we will not stop to consider. Under the undisputed evidence

in the record and in the light of the contract as a whole, we are satisfied that the defendant was not entitled to the requested instruction.

The defendant now bases his alleged dissatisfaction upon two grounds: (1) That the slope of the Walnut street sidewalk was greater than the requirements of the specifications, and that its edge at the curb was therefore 1¼ inches below grade; and (2) that the material used did not contain a sufficiently large proportion of cement as compared with the sand. The evidence is sufficient to show that the edge of the sidewalk at the curb was one inch and one-quarter below grade. The grade was exact at the lot line. The specifications of the city required a slope of three-sixteenths inch to the foot. The plaintiff himself worked as a laborer upon his contract. The work was all done under the direct supervision of the city inspector, Robinson, and also under the direct observation of the defendant himself, who conceded, in his testimony, that he was present practically all the time with a "two-foot rule" in his hand, and that he was watching to see that all specifications were complied with. The grade and the slope were determined in advance by a survey, and the lines laid thereto. The slope conformed to these lines. Robinson, as a witness for the defendant, testified that it was his duty to see that the· work was performed in accordance to specifications, and to stop the same when specifications were violated. Robinson gave various directions in the course of the work, including some changes, and all were complied with. Likewise the defendant made certain demands or requests, and these were complied with. The slope adopted was as apparent and ascertainable before the walk was done as afterwards. After the completion of the Walnut street walk, the walk on Grand avenue was constructed. No complaint is made of the grade or slope of that walk; nor was there any pretense of complaint of the slope on the other walk until after both walks were constructed.

2. SAME: approval of improvement: evidence.

The first complaint made is stated by the defendant in his testimony as follows: ''When the plaintiff and the workmen came to my office after the work was completed, I told him I would not pay for the walk. He came demanding pay, and I told him I would not pay for the walk until it was shown to me that it had been put in according to the specifications as required by the contract; that I had reason to believe that it had not been put in according to the specifications. He said he had put in a good walk, and that is as definite as I can recall his conversation.'' At about this time Robinson withheld approval because of the variation in grade. It appears, without dispute, that the real occasion for Robinson's action was that another property owner had constructed his walk adjoining on the west and had put his grade at the curb line nearly an inch too high. The two discrepancies added together made an elevation of about two inches at the adjoining line of the curb of the two walks. On the same day the question was thereupon submitted to the superintendent of the department of streets and to the city engineer, who were the superiors in office of the city inspector. Both the superintendent and the city engineer approved the job and ordered its acceptance, and, under their instruction, the city inspector did likewise. Afterwards there was some vacillation on the part of some of the officials. The city inspector changed his mind on the alleged ground that the city engineer had changed his. The city engineer was a witness for the defendant on the trial, but did not testify to any change of mind on that question. As to the general effect of the increased slope, he testified as follows: ''Ordinarily it would have no effect—no bad effect. The fact that some one else had constructed a walk immediately west of this, and that there was an offset of a little more than two inches, is how my attention was called to it; and, in doing so, I found that both sidewalks were slightly or had slightly deviated at that point from the true grade or the true slope they should have across the walk, one a greater slope and the other less. But in case both walks

had been constructed to a given point there, no one could tell it without an instrument.''

The specifications of the city that were made a part of the contract contained the following provision heretofore referred to: ''The decision of the superintendent of the department of streets and public improvements and the civil engineer as to the manner in which the work shall be executed, and the quality of material, shall be final and conclusive. The contractor shall have charge of and be responsible for the entire work until its acceptance.'' Inasmuch as it appears conclusively that these officers did approve the work, and did so with reference to this very alleged variance, it ought to have ended that part of the controversy. The defendant, however, got the benefit of a trial to the jury on the real merits of his complaint. Upon this record, he was not entitled to more.

As to the second complaint, it appears to have been an afterthought. The cement and sand were measured and mixed under the eye of the defendant and the city inspector throughout the performance of the contract. Some complaint was made, at the first, as to the methods of mixing and measuring; but these were corrected to conform to the requests of the defendant and the inspector. The merits of this contention were submitted to the jury. What we have already said as to the decision of the superior officers is also applicable here. The defendant's demand was that he be ''shown.'' By his own evidence he had seen all that was done, and the way it was done, and he had no apparent need of further showing. But the plaintiff complied with his request, and procured for him affidavits from those who participated in the work. Then the superintendent of the department and the engineer were called upon, and they approved the work.

By this suit, defendant's demand that he be ''shown'' has been complied with for the third time. Defendant based his original objection solely upon the ground of a suspected failure of compliance with specifications. Plaintiff proved his

compliance therewith by the only methods available to him. The jury found compliance. We also think that, under the defendant's own evidence, he should be held to have approved the work by his own conduct prior to the demand for payment.

The foregoing is decisive of the principal points presented for our consideration, and we need not deal with them in further detail.

II. The appellant complains of a certain remark made

3. NEW TRIAL: remarks of court: prejudice.

by the trial court in the course of the trial, and which is alleged to have been very prejudicial. The remark will be found in the following cross-examination of the plaintiff as a witness:

Q. That is why these fellows went with you up there to get their money so that they could get their pay? A. Yes, sir. Q. So that they could get their pay? A. So all of us could. Q. And you haven't paid them yet? A. No, sir; I cannot pay my debts when I cannot get my money that I have worked and earned. Q. And you haven't paid them? A. No, sir; I have not. Q. And you want to pay it with the money you get out of this lawsuit? A. I want to pay them from any money I get from any work I do. Q. If you get the money out of this lawsuit, you can pay them? (Objected to by plaintiff as not proper.) Court: It is very evident that this man is not a capitalist.

In the light of the cross-examination, the remark was not without its pertinence. The line of the cross-examination was clearly inappropriate. When counsel enter the field of improper cross-examination, they must take some chances on the judicial patience. There was nothing immoderate in the remark of the court under consideration, and we think it furnished no fair ground of complaint. On the whole case, we are impressed with the lack of substantial merit in the defendant's defense.

The judgment below will be *Affirmed.*